**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Clarksburg Division**

ELECTRONICALLY
FILED
Apr 23 2026
U.S. DISTRICT COURT
Northern District of WV

**ALEXANDER JAMES KNOTTS,**

      **Plaintiff,**

**v.**

**EQUIFAX INFORMATION
SERVICES, LLC**

      **Defendant.**

**1:26-CV-47 (Kleeh)**
Civil Action No. ___-cv-_____

### COMPLAINT

In this case, Defendant Equifax Information Services, LLC combined or mixed Plaintiff's credit file with another person, which resulted in the publication of inaccurate information, including collection accounts and account inquiries. This case involves Defendant's repeated insistence on inaccurately reporting Plaintiff's credit. Despite requests for reinvestigation and correction by Plaintiff, Defendant failed to reasonably investigate Plaintiff's disputes and continued to inaccurately report that Plaintiff had a serious delinquency on accounts that he had never opened. Because of their reporting, Plaintiff was served with a criminal complaint from a Texas court even though he had never visited Texas. Plaintiff brings this action for actual, statutory, and punitive damages, and for costs and attorney's fees, pursuant to the Fair Credit Reporting Act.

### PARTIES

1.     Plaintiff Alexander James Knotts ("Plaintiff" or "Mr. Knotts") is a resident of Harrison County, West Virginia, which is within the territorial confines of the Northern District of West Virginia. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

1

2.	(a)	Defendant Equifax Information Services, LLC ("Equifax") is a corporation registered to do business in West Virginia with its principal office in Georgia.

(b)	Defendant Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).  Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

(c)	Equifax disburses such consumer reports to third parties under contract for monetary compensation.

## JURISDICTION AND VENUE

3.	This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

4.	Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 1681p because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to these claims occurred in this District.

## STATEMENT OF FACTS

5.	Plaintiff Alexander James Knotts received a debt collection letter from a company collecting on behalf of a toll booth in the state of Maryland.

6.	Plaintiff had not traveled through the state of Maryland and did not own the Ford F-150 truck that was the subject of the debt collection.

7.	Soon after, Plaintiff received a summons to attend a court hearing in Houston, Texas, for a traffic citation and fine.

8.	Plaintiff has never been to Texas at any point in his life.

9.	Plaintiff then began receiving credit denial letters from car lenders in March 2025.

10.	Plaintiff was not shopping for financing for a vehicle in 2025.

2

11.	Plaintiff began receiving debt collection communications from Champs Auto of Sterling.

12.	Plaintiff had not bought a car or borrowed any money from Champs Auto of Sterling.

13.	Plaintiff noted that Sources Receivables Management was attempting to collect a defaulted TMobile account.

14.	Plaintiff never had a TMobile account.

15.	Plaintiff found that Verizon was negatively reporting on his credit account.

16.	Plaintiff never had a Verizon account.

17.	Upon reviewing his credit disclosure, Plaintiff identified multiple accounts that did not belong to him that were being reported on his disclosure.

18.	Plaintiff identified multiple 'hard inquiries' on his credit report from multiple car lenders throughout 2024 and 2025.

19.	Plaintiff prepared an identity theft affidavit in or around June 2025.

20.	Plaintiff filed a police report with the Clarksburg Police Department with PFC Adam Johnson.

21.	Plaintiff disputed these false tradelines by mail to Equifax in June 2025.

### Equifax's Inaccurate Reporting

22.	After receiving Plaintiff's dispute mailed in June 2025, Equifax did not respond in writing to Plaintiff.

23.	Plaintiff checked his Equifax status online and learned that on July 15, 2025, Equifax claimed it received Plaintiff's request.

24.    Plaintiff's online status further stated that Equifax had stopped investigating as of July 20, 2025.

25.    However, Equifax never provided any results to Plaintiff.

26.    Equifax received additional disputes from Plaintiff on July 28, 2025, and August 12, 2025.

27.    Equifax stated that those dispute investigations were completed on August 4, 2025, and August 23, 2025.

28.    However, Equifax never provided any results to Plaintiff.

29.    Plaintiff called Equifax on December 31, 2025, to request the results of his dispute processing.

30.    Equifax advised Plaintiff that a letter would be sent in five days from when he called.

31.    During the call, Equifax confirmed that the dispute was resolved and stated it was resolved on the day that he was calling them.

32.    However, Equifax never provided any results to Plaintiff.

## **Damage**

33.    Defendant included inaccurate information in Plaintiff's credit report due to its lax threshold designed to over-include information in consumer reports.

34.    These derogatory and mismatched sets of credit information severely reduce Plaintiff's credit score.

35.    Defendant failed and refused to perform a meaningful and searching inquiry into the substance of Plaintiff's dispute and to accurately report Plaintiff's credit line relating to his credit.

36.     After receiving and allegedly completing investigations of Plaintiff's disputes, Defendant prepared and published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate derogatory credit information.

37.     As a result of Defendant's conduct, Plaintiff has suffered loss of credit; loss of the ability to purchase and benefit from credit; increased insurance rates; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

38.      Due to the inaccurate credit reporting, Plaintiff has been denied the opportunity to refinance his Sallie Mae student loans to remove his grandmother as a cosigner due to the inaccurate information, higher insurance rates, and avoided credit opportunities, such as refinancing his truck, due to the likelihood of higher interest rates.

39.     Plaintiff attempted to obtain credit from his employer and from Capital One but was rejected after lenders reviewed his credit profile.

**COUNT ONE:**
**(Violation of 15 U.S.C. § 1681i)**
**FAILURE TO REINVESTIGATE**

40.     Plaintiff incorporates all of the preceding paragraphs by reference.

41.     Defendant Equifax failed to conduct a reasonable reinvestigation of the information in Plaintiff's credit file after receiving actual notice of inaccuracies; failed to delete inaccurate information upon actual notice of inaccuracies; failed to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and relied upon verification from a source it has reason to know is unreliable, in violation of 15 U.S.C. § 1681i.

42.     Defendant's conduct, action, and inaction was willful, or, in the alternative, negligent.

43.     As a result of Defendant's action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

## COUNT TWO:
### (Violation of 15 U.S.C. § 1681e(b))
### FAILURE TO ASSURE ACCURACY

44.     Plaintiff incorporates all of the preceding paragraphs by reference.

45.     Defendant failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files maintained and published concerning Plaintiff, in violation of 15 U.S.C. § 1681e(b).

46.     Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

47.     As a result of Defendant's action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

## COUNT THREE:
### (Violation of 15 U.S.C. § 1681i(a)(5))
### REPORTING INFORMATION WHICH IT CANNOT VERIFY

48.     Plaintiff incorporates all of the preceding paragraphs by reference.

49.     Defendant failed to delete the false tradelines from the credit report and credit files maintained and published concerning Plaintiff after a reinvestigation would have found the data to be unverifiable, in violation of 15 U.S.C. § 1681i(a)(5).

50.     Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

51.     As a result of Defendant's action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

### COUNT FOUR:
**(Violation of 15 U.S.C. § 1681i(a)(6))**
**FAILURE TO PROVIDE WRITTEN NOTICE OF INVESTIGATION**

52.     Plaintiff incorporates all of the preceding paragraphs by reference.

53.     Defendant Equifax failed to provide required written notice of its reinvestigation within 5 business days per § 1681i(a)(6).

54.     Plaintiff was unable to reasonably conform his conduct due to Equifax's failure to deliver this content, which are designed to ensure consumers receive meaningful information about their rights and the investigation results.

55.     Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

56.     As a result of Defendant's action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

### COUNT FIVE:
**(Violation of 15 U.S.C. § 1681c-(2))**
**FAILURE TO BLOCK ALLEGED IDENTIFY THEFT INFORMATION**

57.     Plaintiff incorporates all of the preceding paragraphs by reference.

58.    When a credit reporting agency receives the information required by 15 U.S.C. § 1681c-2(a) it "shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft" within 4 business days.

59.    Here, Defendant received, as early as June 2025, and repeatedly thereafter, information sufficient to trigger its duty to block identity theft information and to investigate Plaintiff's disputes, correct Plaintiff's credit report, and provide her dispute or a summary thereof on her credit report.

60.    As a result of Defendant's willful violations of the FCRA, Defendant continued to report false and highly derogatory information on Plaintiff's consumer credit report.

61.    Defendant's conduct, action, and inaction was willful, or, in the alternative, negligent.

62.    As a result of Defendant's action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a)    Appropriate statutory penalties for each violation of the FCRA;

(b)    Actual damages;

(c)    Punitive damages;

(d)    Reasonable attorney's fees and the costs of this litigation;

(e)    Pre-judgment and post-judgment interest at the legal rate;

(f)    Appropriate equitable relief, including the correction of Plaintiff's credit score; and

(g)     Such other relief as the Court deems equitable, just, and proper.


**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

                                        **Plaintiff,**
                                        **ALEXANDER JAMES KNOTTS,**
                                        **By Counsel,**

/s/ Benjamin M. Sheridan
Benjamin M. Sheridan (# 11296)
        ben@kleinsheridan.com
Jed R. Nolan (#10833)
        jed@kleinsheridan.com
Counsel for Plaintiffs
Klein & Sheridan, LC
3566 Teays Valley Road
Hurricane, WV 25526
(304) 562-7111

J. Brandon Shumaker, Esq.
WV State Bar No. 11237
Slavey & Shumaker PLLC
174 Chancery Row
Morgantown, WV 26505
(304) 212-5791
(304) 212-7908 (fax)